Am I broadcasting to you in a way that everyone can understand? Yes, we can hear you. Thank you. I've had some trouble with zoom in the past and being born in the first time in our administration, distrustful of some of this technology. This is a this is a trouble free panel. I wish we had something as newsworthy and tabloid press worthy as the last argument that we listened to, but I'm afraid we just have a contract dispute. And you cannot you cannot beat our job for the variety of matters that we hear. Trust me, it's hard barks to zebras, but we love it. So we're that being the case, we're generalists. So we depend on you lawyers to fill in the details for us, even on contract matters. So you can go for it. Thank you, Your Honor. Let me first try to quickly dispose of this timeliness of appeal issues so that we can get to the substance of what we think the case is about. There was only one judgment entered in this case, and it was entered back in July of 18. It's it's a docket number 95. Both sides timely appealed that judgment and Pathway made its arguments about fire material breach. They kept made its arguments about a and there has never been an amended judgment. But the other I mean, this is it. This for me is a very difficult, tricky issue, because I'm not sure I'm going to let you get right to the substance, because you would agree with me mandate issue both sides for costs for the first appeal that appeals over. I agree. I agree. But the the we went back on a limited remand and the the opinion from the Fifth Circuit, you know, the Fifth Circuit first said, please write us letters and tell us where we can find proof of citizenship in the record. The panel, that panel was dissatisfied with that and remanded. And if you look at well, but you were involved because opposing counsel tried to give it to the court directly, I presume under Rule 10. And you move to strike. We do you wanted to get down you win getting back the first appeals gone, they don't retain jurisdiction. And then you actually in your notice, and I'm very sympathetic to the leap year problem. But it sure looked like both of you knew you had to re notify if you wanted to further appeal. Well, if we wanted to appeal, personally, I don't know what my opponents knew. But if we wanted to appeal the jurisdictional question and the lack of discovery, yes, I believed at the time because the remand said it was specific to I believe the Fifth Circuit was retaining jurisdiction and that our appeal was timely. If I'm incorrect about that, there are two other ways in which we were timely. First is if you look at Rule 58, we had 150 days before the the time started. If you consider the amended findings of fact and conclusions of law to be a new judgment, and they don't purport to be a new judgment. But if they are considered a new judgment and that triggers a new obligation to notice an appeal on the entire matter, then if you look at Rule 58, we had 150 days and then the 30 days started running. That would put us out into August. And but you know where their reply is and and I got a little. It is it is a complicated rule, but it looks like the 4A4 continuance. The district court has to grant it before your time to appeal has expired. You think that's too broad a statement? I do, Your Honor. I think that what the not that the district court had to rule, but if you look at the rule itself, it says that we had to move for it before the before 30 days after the time expired, which we did. And we've cited case law that says that exactly what the district court did was appropriate and that this was not designed to be a trap for, and I raised my hand, the unwary lawyer. So I believe there are three bases on which we are timely. And one is Rule 58, that there would be a 180 day time period, and I could go through the language of the rule if the court wants me to. But you put in the briefs. It's in the briefs. And then the last one would be this is a 4A5. Correct. And that the court had the power and discretion to grant that and found good cause. And at the time, I didn't know we had missed it by day. I was the I was the unwary lawyer at the time I was moving because I thought it would be and then later write another brief on excessive attorney's fees. So I asked for an extension just to notice the whole thing, and it was granted with good cause. Counsel, back to Judge Higginson's point, you filed a notice of appeal and but for the leap day, February 29th, it would have been within the 30 days. So as he said, you knew at that point that you had to notice an appeal. And I imagine you were being careful as a lawyer and all that to cover all the bases. So I'm sympathetic to this, but I'm failing to see how the notice of appeal is timely, given that it's outside the 30 days because you had to file it. So why did you do it if you otherwise believe? Well, if you look at the last line of Judge Austin's order, he sends the case back to the Fifth Circuit. And so we thought at that point and that would be his docket. So we know he transmits it back. He transmits it back. And at that point, and I don't mean to interrupt Judge Higginson. No, no, I'm interrupting. Answer Judge Wilson's question. At that point, he transmitted it back and everyone in the case, Magistrate Judge Austin, my opponents and I thought it's back at the Fifth Circuit and we're now going to get set for our original appellate arguments, which are the substantive arguments. And then there's not a record. There's no record of this. But Judge Austin called both sides and said, we have been told by the Fifth Circuit's clerk to our clerk here at the district court that the Fifth Circuit does not consider it to be back there. And therefore, I'm not telling you what to do, but I'm giving you that information. And so both sides then noticed an appeal out of an abundance of caution. So there was a lot of confusion based on the fact that the nature of the case was to specifically determine what. And let's say confusion there was, let's say, because circuit courts do remand with different language. Sometimes they say retain jurisdiction and that maybe would give you more confidence. Confusion from the remand, confusion from leap year. But what if the Supreme Court has said in bowls that this is a jurisdictional rule for civil timely appeals and unique circumstances cannot excuse it? I if that is the case, then we go to Rule 58. Yeah. Rule 58 says because this does not fall in those categories where a new judgment was entered in a new writing, then it goes to the 150 days before the clock starts running. Yeah. And therefore, we would have been more than timely. I also believe that the the case law supports that under rule for that Judge Austin did have power to do it. It does not run to the date that he enters the order. It's when we moved for it. And that's clear in the rule as well. And I would hope that our briefing is adequate on that. If it's not, well, I mean, what about getting allow you to get to the point you want to get to it? It looked like a pretty thorough trial and you made your claim that these were material breaches and the district judge said no. You know, you owe someone a lot of money and you've got to commend your client. They had their spreadsheets. I'm not exactly sure how you have you get out of that repayment obligation. Right. And here's how we did. We did have to repay the money. That was one of our obligations on pathway side. But Midcap and it's the record is very full of this. Midcap said we were not only loaning money, we were also providing media services. And there is a section of the contract that says these are MCM's Midcap Media's responsibilities. The two we highlighted at trial that Judge Austin did not rule for us on, but that we highlighted at trial that I believe is clear error is the invoicing requirement. They did not provide invoices and they admitted on the record repeatedly they did not provide them. They said, no, you provided spreadsheets, which we used as invoices. And then the other, which I think is even more substantive, is that the contract under MCM's responsibilities says that MCM shall confirm minimum performance standards prior to payment. Now, what the trial court did with that is said, well, you can't do that until you it's impossible. Well, there is no impossibility of performance pled. But that really misses the point. These were renewable payments to these third parties. And so you do have charge backs and you do have evidence as to whether the minimum performance standards are met going forward. And it was incumbent on Midcap to say, hold it. This isn't working. They were the gate and the reason that we think this is a clear error of contract interpretation, which is decided de novo, is that the judge rewrote the contract. And we've got decades of jurisprudence, both in Texas, which is the substantive law applied here under Erie, and this circuit that says that the party's agreement embodies the language, the agreement, if it's unambiguous, that it embodies the intention of the parties and the courts may not rewrite the contract and they may not interpret them to render any meaningless. And the problem with what Judge Austin did in trying to fashion an equitable solution where the entity is responsible, but the individual is not on the guarantee. He was fashioning what he believed, I'm sure, was a very equitable solution. The problem with that was he was not empowered to rewrite the contract. He was not empowered to to say that meaningless. And that is what he did. Because this obligation to ensure minimal, I mean, to confirm minimal performance standards, it was just written out of the agreement in Judge Austin's opinion, the Magistrate Judge's opinion, and in my opponent's briefing, and they said it's fine. And I would commend to the court and to its wonderful attorneys, certain pages of the record on appeal that I think speak to this. It would be ROA 2150 through 2055, where Mr. Hannington, who was the corporate representative and spokesman for MidCat Media Trial, he admitted over and over again, I had to do it, but I didn't do it. And he said, he got flippant with me. He said, the contract doesn't say I had to fly either. That's on 2154. And he said, when he was finally cornered, he said, my 16 years of experience in this business tells me I did not have to comply with the contract. Well, that's not the way contracts work. And I'm in the business primarily for the last 30-something years of doing insurance coverage work. I mean, we are stuck with the four corners of that agreement. And the four corners of this agreement are unambiguous. They were never modified in writing, and there are several record references as to where it's never modified in writing. So, of course, MidCat needed to go and police and see if these media buys were actually producing good results or fraudulent results. And so you can have these media buys. What my client's doing is he's placing little ads on people's websites, apartment websites, discount tire. Different kind of websites have different kinds of customers that look at them. Some get this service and go, wow, I like having my credit monitored. And they keep it for months. And they pay and pay and pay. Good business. Some get it and go, wow, I don't want this. And they cancel. And in some cases, you even have some of these people at the middleman level who say, well, just go ahead and sign up for it. We require you to get the apartment here. But then you can cancel it for a full refund. Well, that was what this business was sold on, is you're going to monitor this. You're going to apply these standards. And the word prior to means before, before payment. You're going to confirm that these standards are met. The next sentence, and I think part of the telling argument here about why our opponents here at MidCap are incorrect, is that they provided a really nonsensical reading of that section of the contract that said that MCM shall confirm minimum performance standards prior to payment. And then the next sentence gives them sole discretion over when they can deny payment. But it doesn't give them sole discretion over whether or not to do what the contract said and apply the minimum performance standards. And it makes perfect sense, because the courts also say in all of the cases about what is the law of contract construction is that the courts, who are the sole judges of the meaning of the contract, are to harmonize positions to give effect to the party's intent. And if you harmonize the first and second sentence, of course the party that is performing this gatekeeper function, MidCap Media, of course they should have the sole ability to not fund. That's what they're supposed to do. If something looks bad, they sold it. You run out of time. The one issue I think I'm right that no one says there's a jurisdictional bar to is the attorney's fees from the remand. Correct, your honor. Do you want to save just a minute or two to talk about that? Because it was several months, telephone conference, inventory hearing, discovery hearing. Yes. But Judge Austin was saying that he thought this was sort of an error creation strategy. Remember that? Right. And if you read Judge Austin's statements in the hearing, and by the way, I think Andy Austin is a fantastic judge. I always consent to magistrate here. I like trying cases in front of him. But like me and like everyone else, sometimes you get it wrong. And what he did is he limited our discovery to where we could not talk to third parties. We couldn't see. We found this trust. And they dribbled out the information to us. First in the Fifth Circuit letter briefs, we learned new things, a new name, Joe Black. Who's he? Then we learned later in discovery, oh, a Los Lomas trust from California. Well, where are they? And oh, they were redeemed as of a few months before you filed suit. Well, what if they weren't? What if that document was just generated by the most financially interested party here? We didn't get that discovery. It was as if we were in and you can't talk to the bystanders, and we're not even going to tell you who the passengers are. So all of this stuff that happened on appeal that generated, I mean, on remand that generated attorney's fees was generated by the error of MidCap Media in not pleading its citizenship up front. We readily admitted, California, Nevada, it was MidCap with its complex matrix of entities. And I realize I'm going six seconds into my rebuttal time. But it was MidCap that generated all of this attorney's fee by not doing it right the first time, and then by thwarting us with discovery. And what they argue in their briefs is really curious, is that we're to be blamed for not having- I'll let you finish your sentence without breaching your rebuttal time, but I won't let you just keep going. So if you want to finish that thought, you can. Thank you, Your Honor. That we, MidCap Media, are somehow responsible for the fact that there is evidence generated in trying to pry information that in any normal sequence of discovery we would have been allowed to do. We've been allowed to test the allegations of the most financially interested party and test the documents that came out of his computer against the record outside. Like, who is the Los Lomos Trust? When was this really redeemed? Are they California citizens? We weren't given that opportunity. And then, again, we've also pled, and our briefs are very or the amount of fees that they charge, which greatly, greatly exceeded what we charged. Chief, may I ask a quick question before we- Yeah, sure. Yeah, certainly. Go ahead. Counsel, to this point, so the magistrate judge made findings in his determination of the attorney's fees. Aren't we to defer to the magistrate judge absent clear error? In other words, some of the things you're talking about, we owe a good bit of deference to the findings that are in that order, correct? You do. And it has to be clear error. And the Fifth Circuit has intervened when a district court has not given a proper discovery. And there are cases cited in our brief on that. And the Fifth Circuit has also come back and said, wow, they didn't prove it. This is a complete failure of proof. Because the proof is on attorney's fees that somehow this $824 an hour, this $574 an average is at the prevailing rates for what everyone has described as just a collection case with some breach of contract defenses and affirmative defenses. But there was a complete failure of proof. And in that instance- The question put to you was whether or not there was deference owed. Absolutely. And so I won't let you just reiterate on why you think there was an error. Counsel, the opposite has been patiently waiting to push back on a number of what you've said. So let's hear from her. And you've reserved your rebuttal time intact. You'll have the full five minutes when you come back. Thank you. All right. Thank you. And I will admit myself. Thank you very much. All right. Ms. McComas? May I please the court? I'll just jump right in on the jurisdictional issue. All right. We reluctantly brought this issue because nobody wants to say we were all late and miscounted by day. But I think Burnley is completely on point here. And I don't know how to get around it and don't think we should. Burnley clearly says that when you try to move to extend the time to appeal, well, when you bring a Rule 58 motion for extension of time, what you're really asking the court to do is to treat a attorney fee motion as a post-judgment motion, like a Rule 59 motion. And that's what Burnley says is you're not extending the appeal time when you move under that, under Rule 58. What you're doing is you are creating, you're dubbing the fee motion as a post-judgment motion that extends the time to file the notice of reasons very squarely and without any interpretation that it has to be done within the original time to file the notice of appeal. When you fail to do that, you have not timely appeal. And I'm sure you guys have already read the language, so I'm not going to read it to you, but it is very clear in my opinion. And it very much distinguishes a 4A5 extension that requires a showing of excusable neglect. I think there is no question here that the motion that was that was sought for an extension was a Rule 58 motion for extension to treat the attorney fee motion as a post-judgment motion, and it was not based on excusable neglect. Is there a law to... Go ahead. Counsel, I was just going to ask about opposing counsel's statement that the magistrate judge, he makes this statement in his findings about jurisdiction that it's going to be that the file is going to be sent back to the Fifth Circuit. But counsel noted that when the magistrate judge, I guess, tried to do that, the Fifth Circuit informed the court that, in fact, the circuit did not retain jurisdiction and that there was no appeal. So tell me a little bit about what the party's understandings were at that point when the magistrate judge informed you of that fact. That was within 30 days, correct? Uh, yes. And interestingly, the pathway had already filed a motion to extend with respect to the Rule 58 motion by that time. So I can't put my head in their brains, but there was some recognition that there was an appeal that was upcoming that needed to be paid attention to. I will tell you that we did have that. Mr. Skelton is completely right. We did have that conversation with the judge. He says, oh my goodness, I thought this was a limited remand. But I think it falls on us as the counsel to understand the scope of the mandate that's been issued. And I'm not sure any of us have discretion to get around them. There are two ways this court, when it remanded, could have done it. It could have retained jurisdiction over the main case and done a limited remand for further findings. And whether we did or not, it's on us if we didn't look to make sure that's what happened. But what really happened is it was a full mandate. There was limited scope of what the district court was allowed to do when it remanded. But I'm sure your honor is very aware of how this process works, that there is a clear delineation in the rules of when jurisdiction resides in the district court and when it resides in the Fifth Circuit. And that has to be done very clearly so that we don't have confusion about who's doing what. And that's really what happened here. We had an original appeal. Everything went up. We all agree this court had jurisdiction at that time over that appeal. But when this court remanded, it did so with very specific instructions, but it sent the whole case back. And if Judge Austin had found that there wasn't diversity jurisdiction, then it would have made sense because the original judgment would have been reversed and there wouldn't have been any reason for that to continue to reside at the Fifth Circuit. I hope that answers your question. Yeah, it is. It's not really even the tail wagging the dog because the mandate rule, we remand so much. I'm just thinking even in this sitting, we've had another case where certain language was used for a remand. So I guess I'd be curious to know what you think when in this case, of course, the prior panel, Sua Sponte brought it up, then you try to confirm it directly to them and that wasn't accepted. So I guess I have what what's the clearest way for litigants? One way is to say we remand and we retain jurisdiction. Do you think just saying those magical words actually would accomplish no need for a notice? I think in that instance, there would still if you had a limited remand, we would still have to do something to get the rest of the case back up to you so that you knew. Yeah, but that's just transmitting it. What I see most courts doing is we retain jurisdiction, they signal to the parties directly. But the more I thought about this case, the less that works, because if you're doubting your own jurisdiction, you can't probably retain it. So I'm not really sure a court of appeals can ever remand for jurisdictional facts and not require a notice unless they'd actually dismiss the appeal without prejudice to reinstatement. But we didn't do that. So then you both go back down. And then I guess a party has two options if you're not going to file that. Well, if you missed the deadline, you can do the excusable neglect route. But they didn't do that. If you do within time, you're saying you didn't even oppose them trying to get the attorney's fees up all with one notice. But Burnley, you're saying is what it is, and it's strict. So I guess I get to one, it seems somewhat harsh, but it may be the consequence of jurisdictional rules. Is there no law that allows us to construe a 4A4 request as a 4A5 excusable neglect request? I think Burnley actually says you can't do that. That the rules require, if you did that, and you just waved a magic wand and turned what was clearly and very expressly a motion under Rule 58 to have a pleading treated, then you've basically thwarted the purposes of the rules. And you've done away with this very narrow extension that's allowed. Admittedly, when people move, I think the court is very generous in granting it. But you have to at least go through that process and invoke that in the timely manner. From your review of 4A5 case law and the Supreme Court's factors, the pioneer factors, would a lawyer admitting they just made a leap year calendar mistake, would that qualify under any circuit law as excusable neglect? I really didn't survey the cases. I sure hope so, if I'm the one having to move on that someday. So maybe that's a question for Mr. Skelton on rebuttal. But I didn't survey the 4A4 cases, the 4A5 cases for that purpose. But it seems to me that if that were the reasoning, then that might make sense. But I will also point out that there was an extension motion filed before that day. Well, last question for me on this, and then you may want to get to the merits, or my colleagues may have questions. But I didn't quite hear your answer. If we had said we retain jurisdiction, would your position still be that they have to file a notice of appeal? I think it depends on what the mandate says. If the mandate held, and I'm not arguing, I'm trying to make sure I understand. If the mandate said that we hold jurisdiction, we remand for the limited purpose of the judge making additional findings below, I think that would be correct, that then we would still have to do something to bring the case back up to you. But I think probably the judge making those circuit might have worked. But that's just not what happened here. But I appreciate the concern on how we do that going forward. All right. Why don't you shift gears to the merits? Okay. We're going to jump very quickly to the merits. I want to point out a few things, just kind of big picture that I think make all of Mr. Skelton's arguments moot. One is to emphasize that this was a very fact-intensive case, and the judge held a trial, made very extensive fact findings, and really what you're seeing here is Pathway trying to retry the case. And under a clear error standard, that just gets you nowhere. But I would point out a few things and a few findings that were overlooked factually, and maybe it's easier to work backwards and start with materiality, although you don't get there unless you show there was a breach. But it's so obvious that there was an admission at the very beginning of this presentation by Mr. Skelton, by Pathway's counsel, that they had to repay the money. That is the most fundamental in a contract that involves the extension of funds on someone's behalf and the repayment of those funds. The repayment, the need to repay those is just fundamental. And nothing weighs the materiality beyond those basic facts, and certainly not here. So let's talk about the two things that that they say we should have done differently. And let's assume just for a minute that they're right. And I want to go back on that because I don't want to concede they are. I want to make it clear that the trial court made very specific findings that they're not right. Evidentiary-wise, the parties used spreadsheets. Those were the invoices. For all purposes, the evidence in this case shows that the invoices, that the spreadsheets were the invoices that the parties relied upon. And there may be conflicting evidence. Mr. Skelton points substantially to David Coulter's testimony. And the judge repeatedly, Judge Austin repeatedly found that that evidence was not credible. His testimony was not credible. And he weighed it against MidCap's witnesses. And he weighed it against the employees of Pathway that testified. And the documents, the emails that the parties exchanges say we're relying on these to determine what everybody owes. So even if there is an Uber requirement, a very strict requirement in this agreement, that you must have an invoice, it must say invoice, it must come specifically from MidCap in the first instance, which by the way, none of those things exist here. If it had all those things, the reality is it would still not be material because the parties all agree that those spreadsheets show what was owed. And that is the purpose of that requirement under the agreement. So with respect to minimum standards, it's very similar. Under minimum performance standards, first and foremost, the district court found that there is no evidence minimum performance standards were never met. The evidence is that to the extent information was available to MidCap at the time they had to fund, and they only had seven days to fund, they checked it. And they confirmed the evidence is also that a lot of information was not available to MidCap, but it was within Pathways control, which is consistent with the interpretation of the agreement, that it was right, but not the obligation not to fund when it found minimum performance standards were not met. I don't think you can read that provision in any way other than for it to be favorable to MidCap as an out if it sees something that's bad for it. It is not a protection for Pathways. And you know that if you look at the agreement as a whole and the other provisions in that very section that talk about the requirement for Pathways to review and approve in writing every extension of credit before it's made. And Pathways own witnesses also testified that they did that due diligence internally. It was never expected that MidCap would be doing it. So I went kind of backwards on that issue, but there are a lot, there's just a litany of reasons why factually it's incorrect. One, and particularly on the judge's findings that are supported by substantial evidence, and that's all we need for clear error with respect to your review here on appeal. One is that there's no evidence minimum performance standards were never met. Two is, to the extent they could be met, they were, which is a bit the flip of the first. And then the third one is, under the agreement and how it was written, that provision didn't create some uber supervisor obligation to MidCap over Pathway to protect it from ever losing money or doing a bad deal. And the evidence supports that interpretation as well. But we get to materiality on the minimum performance standard side too, and it's very consistent. For the same reasons that control of the data that MidCap did, even if there was an obligation on MidCap's part to check minimum performance standards and an obligation not to fund, as opposed to a right in its sole discretion, which is exactly what the agreement says not to fund, then it would still not be material because Pathway approved each and every one of those extensions of funds after it had the minimum performance standards itself. I want to jump real quickly to the fees since that's really the issue that we have before us. I want to point out one thing that maybe isn't as clear in the briefing that kind of shuts down a lot of the analysis that we've had, and that is, I think we're in agreement at this point that regardless the first fee award was not appealed. That issue went up to this court, and this court made a ruling, remanded the case, and that issue was never raised in the briefing. There was no notice of appeal, and that issue is therefore law of the case. So with respect to the fact that the rates are exactly the same from the original fee award to the fee award on remand, I think that eliminates any need to address that here. As a matter of law and law of the case, that decision has been decided. It's effectively waived, for lack of a better word, by Pathway. Then on the merits too, I think Judge Wilson got it right, is that it is an abuse of discretion standard, and the case law tells us that when you get to the issue of fees, that abuse of discretion is judged by whether or not the counsel... Counsel, as far as... I'm sorry to interrupt you, but it's back to my questioning of your counsel opposite. As far as the findings the management judge made regarding using this discovery to try to create error, and just the court's general take on why the fees were, in terms of the hours spent, what they were, did those findings get the same deference as well, clear error, or some other standard? Yes, I think it would still be clear error, right? It's a very fact-intensive inquiry for the judge to determine what was reasonable with respect to the time that the attorney spent below, and he was there. I would commend you to pages 50 through 55 of our brief. There were so many of the appellee's cross-appellate's brief, so our opening and responsive brief, which lays out in painstaking detail what happened in that substantial evidence to support Judge Austin's finding on that fact. But, I mean, it was... I did read all the telephone conferences, and the evidentiary hearing, the discovery hearing, and it was sort of... it was a little bit sort of pulling teeth, because these other non-member owners with redacted forms, it seemed like a lot of what they were asking for was in good faith, but I guess, again, that may just be subject to a standard of deference. Aren't they also making the legal argument that you shouldn't be able to be paid for something that was your obligation at the outset? In other words, they didn't contest diversity. You had to show what the Fifth Circuit said you hadn't. If that's a threshold obligation of yours, why are they paying your fees to sort of get the second bite, which you got? Because it was necessary for us to succeed on our breach of contract claim. We're only here today talking about the merits for the first time, and whether we did that first time around or second time around, the reality is that was a threshold issue that had to be satisfied for us to recover our attorney's fees, and that's what the attorney's fee provision provides for recovery. Reasonable and necessary fees to recover for you. But, in a way, what I'm saying is they were helping the court. They hadn't brought this up originally. We had doubts, and then he really has an attorney obligation to run those doubts down, but now he's got to pay for it, even though it was your burden at the beginning. Do you have any law? Do you have any case that you can find attorneys being awarded on a remand for the jurisdictional? I mean, of course, you prevailed because the case stayed there. I found very few cases where this exact situation happened, so finding one specific to attorney's fees, I don't think I can. Yeah, you're right. I will push back a little bit with respect to your perception of what happened below. It's hard because we were there, and we have to summarize it in our brief because we have page limits. If you go to the meetings before that, it was a cat-and-mouse game. I trust us. We read these records, so I read that, and Judge Austin clearly felt it was that. He called it error creation. He said it was snipe hunting, but at other times, he seemed quite respectful of postponing and extending. I don't know. That seemed just sort of one particular testing exchange, but I appreciate that. Thank you for pointing me back to that portion. Your Honor, he also gave us a haircut on our fees. We cut them by 20%, so he didn't give us everything we asked for. I think it's hard to say he didn't exercise the level of judgment that was necessary. I see my time is up. Thank you. All right. Thank you much. Thank you for answering the questions. We're back to you, Mr. Skelton, for your rebuttal. Thank you, and may it please the court. To take those arguments in sort of the order that they came, the Brunley or Burnley case is very different from ours, and it was a 180-day case. In Brunley, there was no notice of appeal, and even after the 180 days, which was the applicable standard, not 30, they missed that. Here, we had two notices of appeal. One was the timely notice to the Docket 95, the original judgment, and then we had the one that was a day late, but we had a valid motion to extend, and I think where I hope the court will focus is looking as did we have 30 days or did we have 180 days? I think that's the crux of the issue. If mandated issued and our original notice is no longer valid, then what did we have? Let me ask you a question because you've argued this on the record already. Burnley is there, so articulate for me in a declarative sentence what the holding you want from this panel with respect to what Burnley says and the circumstances presented to us in this appeal. What is it you want us to say in the disposition, because I'm not sure I know what that is. Yes, your honor. What I would say, if the court is position and believes that the first notice of appeal is no longer sufficient, then we look at what triggers a notice, what triggers 30 days or 180 days, and what it is is the amended findings of fact and conclusions of law. They may only be one item. They have to be something that triggers an appeal. If they're not merely findings of fact and conclusions of law pertinent to the original judgment, an amended judgment would go to the default of 150 days before the clock runs, and that's why we were timely. I also disagree with counsel that if we go to the third step, that we did not have, that the magistrate judge did not have the ability to extend because the rule says good cause or excusable neglect. It's an or, an and or. So, I would think the court should rule that there was confusion. It was raised when the judge tried to transmit the case back, and it was not accepted by the Fifth Circuit. Therefore, let me ask you, when did you, that I asked counsel opposite this, when you had the conversation with the magistrate judge after the district court attempted to transmit the file of the Fifth Circuit, was that within the 30-day period? Yes, your honor. It was, and we could have filed a notice of appeal that day, but we didn't. Both parties, but both parties knew before the 30-day period elapsed, after the magistrate judge rendered its final order, that there would need to be a notice of appeal that the Fifth Circuit had not retained jurisdiction, correct? Well, we were confused about it, but I think it would be fair to say we were on notice that there was a problem, and so at that point. You said you were confused, but the magistrate judge, I thought you said, called the parties and said, when I sent this back to the Fifth Circuit, they said it's not back yet, we don't have it. Correct. So, at that point, everybody shouldn't have been confused about any sort of retention of jurisdiction in our court, correct? Personally, I was. I thought the original would still be good for that, that appeal and those issues, and I would need a new notice for the new findings and the amended findings of fact and conclusions of law, but regardless. Why wouldn't you, why wouldn't the abundance of I mean, why wouldn't the belt and suspenders parachute approach be, you know, y'all been around the Bush a long time dealing with this, so why wouldn't you file a notice of appeal out of abundance of caution if you're still saying there was, quote, confusion. We should have. As opposed to working on an assumption. You're right, Your Honor, and we should have. That's a mea culpa. I missed it by a day. My legal assistant put in February is 28 instead of 29 days, so we should have if we were going to belt and suspenders do it, but the fact is the triggering event had to be this amended findings of fact and conclusions of law. They're not a new judgment. They could be an amended judgment conceivably, but that's, and nothing in that document says it's a judgment, so if it's an amended judgment, it's not 30 days. It's 150 plus 30. So if I could briefly address the other issues that Ms. McComb was so ably raised on this, what Judge Austin found was simply contrary to what the rules of discovery allow. You're not restricted to only the testimony of a financially interested witness and his own documents that come out of his computer, particularly when he has this vast matrix of over 100 entities, each of which has members who are whose citizenship is relevant, and it would be like saying that the prosecutors and the civil litigants in the Madoff case were only allowed to look at what Mr. Madoff came up with in his office where he was making stuff up. That's not the law. All right, I'm gonna give you a conclusion, let you conclude that thought, but I'm not gonna give you extended argument time because of your own rebuttal. So there's a point she brought up that you didn't hit earlier. I'll let you do it straightforward, but I don't want you to veer back to pick up something else. You with me? I'm with you. Another point she brought up is she said that the trial court's findings have to be given great deference and he found no materiality. Well, the materiality is not in Coulter's discredited testimony. It's in Hannington's testimony where he said, I either didn't do it or I didn't have to do it because of my years of experience, and he struggled to talk about it. And the fact that the relationship failed in four months. So this was not a breach that doesn't matter. This was highly material. And I very much appreciate the court indulging us both and reading our briefs and being so well informed. It's a pleasure to be in front of a court where everybody asks questions. All right. Now, we appreciated one of the most valuable parts of setting the case's argument, notwithstanding the excellence of the briefs. It really does help us to be able to ask the lawyers involved these questions to often refine the issues that are in the briefs, but more to the point, sharpen it up for us. So we appreciate both of you responding to all the questions, but quite obviously, your briefs are the cement upon which your appeal is based. So we will go back to that as well as the record and we'll get the case decided. So the case will be submitted to the panel and we'll decide it as quick as we can. But we appreciate your